# THE SUPREME COURT, STATE OF WYOMING

# 2022 WY 98

**APRIL TERM, A.D. 2022**

**August 17, 2022**

JOSEPH SENA,

**Appellant**
**(Defendant),**

v.

THE STATE OF WYOMING,

**Appellee**
**(Plaintiff).**

S-21-0082, S-21-0083, S-21-0279

*Appeal from the District Court of Laramie County*
*The Honorable Peter H. Froelicher, Judge*

*Representing Appellant:*
> Office of the Public Defender: Diane M. Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Robin S. Cooper, Senior Assistant Appellate Counsel.

*Representing Appellee:*
> Bridget L. Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames*, Senior Assistant Attorney General; Catherine M. Mercer, Assistant Attorney General.

\* An Order Allowing Withdrawal of Counsel was entered on August 1, 2022.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE:** This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FENN, Justice.**

[¶1]    Joseph Sena challenges the district court's decision denying his post-sentence motions to withdraw his no contest pleas in two separate dockets, Docket Nos. 34-682 and 34-683.  In Docket No. 34-682, he was charged with one count of burglary.  In Docket No. 34-683, he was charged with one count of attempted murder in the first degree and one count of aggravated assault.  Pursuant to a global plea agreement, Mr. Sena entered a plea of no contest to attempted voluntary manslaughter and burglary.  The State subsequently dismissed the charge of aggravated assault and jointly recommended a sentence.  On appeal, Mr. Sena challenges the State's comments at sentencing concerning the availability of its witnesses.  We affirm.

## ISSUES

[¶2]    We state the issue as follows:

> I.    Did the district court abuse its discretion when it denied
> Mr. Sena's motions to withdraw his no contest pleas?

## FACTS

[¶3]    Joseph Sena pled no contest to charges in two separate dockets, Docket No. 34-682 and 34-683.[1]  In Docket No. 34-682, Mr. Sena pled no contest to one count of burglary for acts he committed on October 8, 2017.  In Docket No. 34-683, he pled no contest to one count of attempted voluntary manslaughter for acts he committed on January 17, 2019.  For both dockets, Mr. Sena agreed the district court could rely on the affidavits of probable cause to provide a factual basis for his pleas.[2]

[¶4]    In Docket No. 34-682, the State charged Mr. Sena with one count of burglary. According to the Affidavit of Probable Cause, the Cheyenne Police Department received a report of a home invasion burglary on October 8, 2017.  It was reported that the owner and her two children arrived home and heard a loud banging on the front door.  The owner stated there was a louder bang and three males entered her residence.  One of the men claimed to have a gun and asked for "Travis."  The owner responded that she did not know Travis and threatened to kill the men.  The men left with items from inside the home.  The

---

[1] In a separate docket, Docket No. 33-609, the State filed a petition to revoke Mr. Sena's probation on his conviction for property destruction.  Mr. Sena admitted to the revocation at the change of plea hearing.  The district court revoked Mr. Sena's probation and imposed the underlying sentence of two to four years to run concurrently with Docket Nos. 34-682 and 34-683.  Mr. Sena does not appeal the probation revocation.
[2] A district court is not required to "obtain a factual basis when accepting a plea of [no contest] so long as the charging document contains an accurate and complete statement of all the elements of the crime charged." *Berry v. State*, 2004 WY 81, ¶ 39, 93 P.3d 222, 234 (Wyo. 2004) (quoting *Peitsmeyer v. State*, 2001 WY 38, ¶ 7, 21 P.3d 733, 734 (Wyo. 2001)).

1

owner reported her purse was taken from her bedroom and two decorative knives were missing from her living room wall. The children found her purse a short distance away and the three men were seen leaving in a silver sedan near where the purse was located.

[¶5] The owner witnessed one of the men holding the glass pane from her screen door. Investigating officers seized the glass pane and submitted it to the Wyoming State Crime Laboratory for forensic analysis. The State Crime Lab found 15 latent prints and identified prints belonging to the owner and Mr. Sena.

[¶6] In Docket No. 34-683, the State charged Mr. Sena with two counts: Count 1) attempted murder in the first degree; and Count 2) aggravated assault. According to the Affidavit of Probable Cause, on January 17, 2019, the Cheyenne Police Department received a report of a stabbing, and officers were dispatched to the scene. At the scene, officers contacted the victim and his girlfriend. The officers observed multiple stab wounds and cuts on the victim's body and had him transported to the hospital. Officers interviewed the victim's girlfriend. She reported seeing a gold-colored car in the alley when she and the victim pulled into the driveway. She stated the gold-colored car pulled out of the alley, drove past her residence, turned around, and parked in the street. She stated two men exited the vehicle and approached the victim and began stabbing him. She identified Mr. Sena and Isaac Garcia as the suspects. At the hospital, the victim also identified Mr. Sena and Isaac Garcia as the men who attacked and stabbed him.

[¶7] A relative of the next-door neighbor witnessed the attack and spoke with officers at the scene. Officers were later able to obtain video surveillance from the neighbors' house. The video captured the attack.

[¶8] On July 28, 2020, Mr. Sena entered into a global plea agreement pursuant to Rule 11(e)(1)(B) of the Wyoming Rules of Criminal Procedure ("W.R.Cr.P"). In Docket No. 34-683, Mr. Sena agreed to plead guilty to an amended charge of attempted voluntary manslaughter in exchange for the State dismissing the aggravated assault charge. The State further agreed to recommend a sentence of not less than ten nor more than twelve years of incarceration to run concurrently with the burglary and a separate probation revocation. In Docket No. 34-682, Mr. Sena agreed to plead guilty to burglary in exchange for the State recommending a sentence of not less than three nor more than five years of incarceration to run concurrently with the attempted voluntary manslaughter and his probation revocation.

[¶9] At the change of plea hearing held on July 30, 2020, defense counsel stated Mr. Sena requested to plead no contest to the charges instead of guilty. The State agreed to the no contest pleas and later filed an amended plea agreement to reflect the change. Mr. Sena entered no contest pleas to burglary and attempted voluntary manslaughter.

[¶10] Four months later, the district court held a sentencing hearing on November 18,

2020. In support of the plea agreement, the State discussed problems with witness cooperation. It argued under the circumstances it was best to take Mr. Sena out of the community for ten to twelve years, "given the issues [it] had with witnesses who were simply afraid to testify." Defense counsel took issue with the State's argument and claimed the State was "flagrantly violating the spirit of the plea agreement by attacking [Mr. Sena] as some type of dangerous individual and all but inviting the Court to impose a sentence greater than that agreed to by the State." The State reiterated that it believed the plea agreement was appropriate and stated its comments "made a record that [the State has] issues with the witnesses . . . that make it appropriate to impose" the agreed-upon sentence. The State also clarified its comments by stating it "made the record of [its] discussions with law enforcement . . . regarding the plea agreement."

[¶11] The district court accepted the plea agreement and sentenced Mr. Sena to three to five years for the burglary charge in Docket No. 34-682 to run concurrently with Docket No. 34-683 and a probation revocation. The district court sentenced Mr. Sena to a period of ten to twelve years for the attempted voluntary manslaughter charge in Docket No. 34-683 to run concurrently with Docket No. 34-682 and the probation revocation.

[¶12] Almost a month after the sentence was imposed, Mr. Sena filed a motion to allow substitution of counsel in both dockets. He also filed motions requesting to withdraw his pleas of no contest. Mr. Sena contended the State admitted at the sentencing hearing that it withheld information about the availability of witnesses in order to induce him to enter into the plea agreement. He further contended his previous defense counsel was ineffective because he did not investigate the availability of the State's witnesses.

[¶13] At the motions to withdraw hearing held on January 11, 2021, defense counsel did not introduce any evidence and instead presented argument consistent with the written motions to withdraw. In an oral ruling,[3] the district court denied Mr. Sena's motions to withdraw and found Mr. Sena did not demonstrate any necessity to correct a manifest injustice. Mr. Sena timely filed a notice of appeal in both dockets.

[¶14] On May 28, 2021, Mr. Sena filed a motion in both dockets arguing ineffective assistance of counsel pursuant to Wyoming Rule of Appellate Procedure 21. This Court stayed briefing until further notice. In his motion, Mr. Sena claimed his trial counsel "was ineffective for failing to properly investigate the availability of witnesses and counsel Mr. Sena accordingly." The district court held an evidentiary hearing and subsequently denied the Rule 21 motion, holding Mr. Sena failed to show defense counsel's performance was deficient. It found:

---

[3] The district court asked the State to prepare a written order based upon its oral ruling. The record does not contain a written order or any indication the State submitted a proposed written order.

3

> [Defense counsel's] investigation of State witnesses' availability and willingness to testify at trial was reasonable based upon the strength of the evidence. There was video surveillance footage identifying Mr. Sena. [The victim's girlfriend] and her children were under subpoena, and the victim . . . was in custody in Larimer County Colorado. In other words, the strength of this evidence then suggested to [defense counsel] that no further inquiry into the availability of the State's witnesses was needed.

Additionally, the district court held Mr. Sena suffered no prejudice and determined:

> Remarks made by [the State] at the sentencing hearing indicated that while the State had some difficulty with its witnesses, there was no indication that the State would have no witnesses available and willing to testify should the matter proceed to trial. In addition, [the investigator with the public defender's office] testified she had maintained contact with [the victim's girlfriend]. [The victim coordinator] testified she maintained contact with [the victim's girlfriend], and [the victim's girlfriend] and her two children, who were eyewitnesses to the stabbing, were under subpoena. Importantly, and as [defense counsel] testified, no prejudice resulted to Defendant because regardless of witness availability, video surveillance footage captured Mr. Sena's role in stabbing [the victim].

[¶15] On September 17, 2021, Mr. Sena timely filed a third notice of appeal, appealing the district court's decision on his Rule 21 ineffective assistance of counsel claim. This Court lifted the stay and consolidated all three appeals.

## DISCUSSION

[¶16] Mr. Sena appeals the district court's denial of his motions to withdraw his pleas of no contest in Docket Nos. 34-682 and 34-683. He contends he was aggrieved by the State's comments at sentencing on witness cooperation. In his motions, Mr. Sena asserted the State withheld information about witness availability to induce him to enter his no contest pleas. He further alleged his counsel was ineffective for failing to investigate the availability of witnesses to testify on behalf of the State.

[¶17] Mr. Sena challenges only "the district court's decision to deny his motions to withdraw his pleas." He does not brief or present any argument to contest the district court's decision concerning his ineffective assistance of counsel claim. Given that he

4

declined to structure an argument on his ineffective assistance of counsel claim, we limit our review to the district court's decision on his motions to withdraw and do not consider any argument that his counsel was ineffective. *See Hardison v. State*, 2022 WY 45, ¶ 23 n.4, 507 P.3d 36, 46 n.4 (Wyo. 2022) (declining to consider an issue not addressed in appellant's brief); *Byerly v. State*, 2019 WY 130, ¶ 110, 455 P.3d 232, 259 (Wyo. 2019) (declining to consider a claim of ineffective assistance of counsel when appellant failed to properly structure an argument).

[¶18]  The withdrawal of a no contest plea is governed by W.R.Cr.P. 32(d). *See Sides v. State*, 2021 WY 42, ¶ 20, 483 P.3d 128, 134 (Wyo. 2021).  Rule 32(d) provides:

> (d) Plea withdrawal. — If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. At any later time, a plea may be set aside only to correct manifest injustice.

Mr. Sena filed his motion after sentencing, so he must demonstrate manifest injustice. W.R.Cr.P. 32(d); *Sides*, ¶ 20, 483 P.3d at 134.

> Manifest injustice contemplates a situation that is unmistakable or indisputable, was not foreseeable, and affects the substantial rights of a party. The rule is, in part, intended to address a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.

*Chapman v. State*, 2013 WY 57, ¶ 57, 300 P.3d 864, 875 (Wyo. 2013) (quoting *Follett v. State*, 2006 WY 47, ¶ 19, 132 P.3d 1155, 1161 (Wyo. 2006)).  Mr. Sena "bears the burden of demonstrating manifest injustice." *Deloge v. State*, 2005 WY 152, ¶ 16, 123 P.3d 573, 578–79 (Wyo. 2005) (quoting *Ingersoll v. State*, 2004 WY 102, ¶ 19, 96 P.3d 1046, 1051–52 (Wyo. 2004)).

[¶19]  In support of the plea agreement, the State discussed at sentencing Mr. Sena's history of violence and the impact on the witnesses.  It stated:

> Mr. Sena's history of violence predates the allegations in Docket 34-683, which is obviously the most serious docket that we have in front of us today.  And he's well-known for that history of violence.  So much so that the State is in a circumstance where [the victim] never appeared in my office. He left to go to Mexico for a long period of time without returning phone calls from the State.  He was never under

5

subpoena.

. . . .

We had two other witnesses who lived next door and they caught this attack on videotape. They moved out of state across the country to get away from Mr. Sena. Third eyewitness, [the victim's] girlfriend, also moved out of state to get away from Mr. Sena; although, she was very cooperative with the prosecution in connection with this case.

So in addition to the issue with those eyewitnesses, Mr. Sena's previous girlfriend who the fight was over did not want to testify against him because she's afraid of him due to his history of violence. One of the aggravated assault cases that was not bound over at prelim, she was the victim in.

. . . I'd also like to note that in this attack there were two little children present. The one, who was [the victim's] - - she calls him father, although, it's not his biological child - - reported in her forensic interview that Mr. Sena tried to cut out her daddy's throat. So she was in a vehicle right next to this attack while it was happening. And another very young child was also in the vehicle but was in a car seat and so luckily for him wasn't able to get up and sort of see what was going on through the window.

So for that reason, . . . Mr. Sena is not a candidate for supervised probation in this case. Ten to 12 years is appropriate. It gets him out of this community for a significant period of time. It was in connection with law enforcement that I agreed to this plea agreement given the amount of law enforcement resources that are dedicated to dealing with Mr. Sena. They agreed that it was best for our community to take him out of the community for its safety for 10 to 12 years, especially given the issues that we had with witnesses who were simply afraid to testify.

[¶20] Mr. Sena argues "counsel for the State announced [at sentencing] the plea agreement was so very favorable to Defendant because the State had no witnesses to present its case, . . . that all of the witnesses refused to appear and that the State could not subpoena them." He contends the State withheld information that none of the eyewitnesses wished to testify in order to induce him to plead. At the hearing, the district court asked defense counsel

6

how Mr. Sena intended to prove the State did not have witnesses available and could not meet their burden if the case went to trial. Defense counsel asserted the sentencing transcript was enough to meet Mr. Sena's burden of proving manifest injustice. After hearing argument, the district court held:

> THE COURT: . . . I have in fact reviewed the sentencing transcript. And I can tell you that my reading of the sentencing transcript does not indicate that the State said they could not prove their case and that they couldn't get the witnesses to come and testify.
>
> The State did indicate that there were difficulties with some witnesses, including [the victim]. But it did not state in any clear manner that it couldn't prove its case. I took it as an explanation as to why the agreement was the way it was, at least in part. But my reading of the sentencing statement by [the State] does not indicate that they couldn't prove their case.
>
> To the contrary, [the State] indicates, [w]e had two other witnesses who live next door and they caught this attack on videotape. They moved out of state across the country to get away from Mr. Sena. The third eyewitness, [the victim's] girlfriend, also moved out of state to get away from Mr. Sena. Although, she was very cooperative with the prosecution in connection with this case.
>
> So to me, the sentencing clearly indicates that the State had witnesses, would be able to get witnesses, and could prove their case. I think it was just interpreted somewhat differently than what was stated.
>
> In addition, the Court has reviewed the entry of the two no contest pleas in these cases, which were done previously. Reviewed the transcript from that. I believe that Mr. Sena entered his no contest pleas voluntarily, knowingly, and he was given all of the advisements that were necessary prior to entering those no contest pleas.
>
> For those reasons, the Court denies the motion to allow him to withdraw because there has not been demonstrated that it's necessary to correct a manifest injustice based upon case law and Rule 32 of Wyoming Rules of Criminal Procedure.

[¶21] "In determining whether the district court erred by denying a Rule 32(d) motion to withdraw, this Court treats no contest pleas like guilty pleas." *Delgado v. State*, 2022 WY 61, ¶ 26, 509 P.3d 913, 922–23 (Wyo. 2022) (citing *Winsted v. State*, 2010 WY 139, ¶ 7, 241 P.3d 497, 499 (Wyo. 2010). The "district court has discretion in determining whether a party has proved manifest injustice" pursuant to Rule 32(d). *Follett*, 2006 WY 47, ¶ 19, 132 P.3d at 1162 (quoting *Ingersoll*, 2004 WY 102, ¶ 19, 96 P.3d at 1051–52). We will not disturb the district court's decision absent an abuse of that discretion. *Id.* "The core of our inquiry focuses upon the reasonableness of the district court's decision" and we will affirm that decision "unless the court acted in a manner exceeding the bounds of reason and could not rationally conclude as it did." *Russell v. State*, 2013 WY 137, ¶ 9, 312 P.3d 76, 78 (Wyo. 2013); *Dobbins v. State*, 2012 WY 110, ¶ 29, 298 P.3d 807, 815 (Wyo. 2012) (quoting *Van Haele v. State*, 2004 WY 59, ¶ 15, 90 P.3d 708, 713 (Wyo. 2004)). "The findings of fact leading to denial of a motion to withdraw a plea are subject to the clearly erroneous standard of review." *Russell*, ¶ 9, 312 P.3d at 78.

[¶22] Review of the record before us establishes the district court did not abuse its discretion and could rationally conclude as it did. After reviewing the sentencing transcript, a reasonable interpretation of the record is that the State proposed a plea agreement because witnesses were afraid to testify, not that they were unwilling or unable to testify. The record does not support a claim that the State could not prove its case and had no witnesses to testify, or that it induced Mr. Sena to enter into a plea agreement. On the contrary, the record establishes in Docket No. 34-682 the State had the clerk of court issue subpoenas for 16 witnesses, which included a mother and her two minor children that were in the home when the burglary took place. The State further had a subpoena issued for Wyoming State Crime Laboratory Forensic Analyst, Mary Symons. Ms. Symons completed forensic testing on a glass pane removed from the home and identified fingerprints on the glass pane that belonged to Mr. Sena.

[¶23] The record for Docket No. 34-683 establishes the State had the clerk of court issue subpoenas for 36 witnesses. Two witnesses were personally served by the district attorney's office and were eyewitnesses to the attempted voluntary manslaughter. One of those witnesses was the victim's girlfriend, and, in front of law enforcement, she identified Mr. Sena in a photo lineup as the assailant. The State indicated during sentencing that this witness "was very cooperative with the prosecution." The other eyewitness under subpoena was a minor child that underwent a forensic interview. For this witness, the State provided notice it anticipated calling the minor as a fact witness. Additionally, the entire attack was recorded on a time-stamped video, which law enforcement provided to the State to use as evidence. The video shows Mr. Sena attacking and stabbing the victim. Although the victim was not under subpoena, the sentencing transcript indicates the State anticipated the victim was going to call into the sentencing hearing to appear as a witness, and while he did not appear, the transcript reveals he personally provided the State with his medical bills for restitution owed by Mr. Sena. The sentencing transcript supports the State was in contact with the victim and the victim was cooperating.

[¶24]   Considering the record on appeal, Mr. Sena's argument does not give rise to a "fundamental defect" resulting in "a complete miscarriage of justice" or an "omission inconsistent with the rudimentary demands of fair procedure." *See Chapman*, 2013 WY 57, ¶ 57, 300 P.3d at 875.  The record supports the district court's finding that Mr. Sena did not meet his burden of establishing a manifest injustice.  There is nothing in the record to indicate the State did not have witnesses or that it could not prove its case.  Instead, the record suggests the witnesses were afraid to testify, which is partially the reason the State agreed to the underlying plea agreement.  Having carefully examined the record before us, we hold Mr. Sena has not demonstrated the district court abused its discretion when it denied his motions to withdraw his no contest pleas.

[¶25]   Affirmed